UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**TANYA RAGAN**                                                                                        **PLAINTIFF**

V.                                   **NO. 3:20CV00078-JTR**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                        **DEFENDANT**

**ORDER**

**I.     Introduction:**

On November 6, 2017, Plaintiff, Tanya Ragan, applied for disability benefits, alleging disability beginning on June 15, 2011. (Tr. at 10). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on May 15, 2019. (Tr. at 25). The Appeals Council denied her request for review, making the ALJ's denial of Ragan's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II.    The Commissioner's Decision:**

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that Ragan had not engaged in substantial gainful activity since the alleged onset date of June 15, 2011. (Tr. at 12). The ALJ found, at Step Two of the five-step analysis, that Ragan had the following severe impairments: fibromyalgia, systemic candidiasis, interstitial lung disease, plantar fasciitis, and bartonellosis.[2] *Id*.

After finding that Ragan's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Ragan had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that she could only occasionally stoop, crouch, crawl, bend, kneel, and balance. *Id*. She would require work on level surfaces. *Id*. She could not work from ladders, ropes, or scaffolds. (Tr. at 14). She could not be around excessive exposure to dust, smoke, fumes, and other pulmonary irritants. *Id*. Finally, she could understand, remember, and carry out detailed instructions and respond to changes in the workplace. *Id*.

The ALJ relied upon testimony from the Vocational Expert ("VE"), to determinate that Ragan could return to past relevant work as an appointment clerk. (Tr. at 24-25). Thus, the ALJ concluded that Ragan was not disabled. *Id*.

---

[2] Bartonella henselae causes an important emerging infection that was first reported in 1990. It is mainly carried by cats and causes cat-scratch disease, endocarditis, and several other serious diseases in humans. Historically, bartonellosis has been described as a mild, acute, and self-limiting illness. *https://www.lymedisease.org/lyme-basics/co-infections/bartonella/*

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

### B. Ragan's Arguments on Appeal

Ragan contends that the ALJ's decision to deny her application for benefits is not supported by substantial evidence. She argues that: (1) the ALJ did not properly evaluate the opinion of her PCP; and (2) the ALJ did not recognize or resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). Ragan asserts that, therefore, she cannot return to past relevant work.

Ragan suffered from back pain, fibromyalgia, and plantar fasciitis. She had significant months-long gaps in treatment for these conditions. Orthopedic manipulation helped for back pain, and at several visits with her chiropractor from 2010-2013, she said she was improving. (Tr. at 443-486). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). Ragan did not receive specialized treatment for

4

fibromyalgia and in 2017, she said that she was taking no medication for inflammation; she treated instead with diet modification. (Tr. at 718). In October 2016, she said she hurt her foot while jogging, but that the pain was better when she walked. (Tr. at 372-373). Ragan was diagnosed with plantar fasciitis, and she was told to stretch to increase range of motion. She did not see a podiatrist, and she said that conservative treatment helped with her foot problems. (Tr. at 50-52). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). While Ragan said that she was reduced to using a wheelchair due to pain, she admitted at the hearing that no assistive device had been prescribed. (Tr. at 54-55). She also said she could perform light housework on her good days. (Tr. at 39-40).

Disability Determination Services medical experts reviewed the record, and in 2018, opined that Ragan could perform a limited range of light exertional work. (Tr. at 97, 120). The ALJ found these opinions to be consistent with the overall record. (Tr. at 24). On July 26, 2018, Dr. Charles Pearrow, M.D., Ragan's PCP, filled out a medical source statement. (Tr. at 697-699). This was done at Ragan's request and she answered questions from Dr. Pearrow as he filled out the very short checkbox form.[3] *Id*., (Tr. at 48). Dr. Pearrow indicated that Ragan would not be able

---

[3] A conclusory checkbox form has little evidentiary value when it cites to no medical evidence

to "stand and do continuous activity for more than ten minutes at a time" and she could not walk more than ten feet at a time.[4] *Id*. The ALJ found Dr. Pearrow's statement to be unpersuasive based on the benign medical record, the repetitiveness of Dr. Pearrow's own treatment records, and the gaps in treatment.[5] (Tr. at 24). Dr. Pearrow's own notes showed that Ragan improved with stretching and manipulative treatment, and that a modified diet helped with fibromyalgia. (Tr. at 575-585). Records from Dr. Pearrow do not support his overly restrictive statements. The Court finds that the ALJ's analysis of Dr. Pearrow's medical source statement was sound.

Ragan also argues that there was a conflict between the VE's testimony and the Dictionary of Occupational Titles, so the Step Four finding that Ragan could return to her past relevant work was improper. An ALJ has an affirmative duty to ask about any possible conflict between the VE's testimony and the DOT before relying on that testimony to support his findings. Soc. Sec. Ruling ("SSR") 00-4p

---

and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

[4] Certainly, the Court has never seen a more restrictive medical source statement, even in cases where claimants with severe postural deficits are awarded benefits.

[5] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is persuasive if it is sufficiently relevant to and consistent with the medical evidence as a whole. *See Phillips v. Saul*, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

(2000), *2-4, 2000 SSR LEXIS 8. Next, an ALJ must explain in his decision how he resolved that conflict. *Id.*

Ragan contends that the RFC limitation to work requiring detailed work instructions conflicts with the requirements of the appointment clerk job (the ALJ found that Ragan could return to work in that role). The appointment clerk job requires level 3 reasoning, which the DOT defines as requiring a worker to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or from standardized situations." DOT, app. C., pt. III (4th ed. rev. 1991). Citing to two 2018 Eighth Circuit cases, Ragan proposes that there is a conflict between the detailed work in the RFC and level 3 reasoning. *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018); *Stanton v. SSA*, 899 F.3d 555 (8th Cir. 2018).

Those two cases differ from this case in that the ALJ's in those cases limited the claimants to very basic one-to-two step tasks. The Court found in *Thomas* that such an RFC was incompatible with level 3 reasoning jobs, and the Court in *Stanton* found that such an RFC was incompatible with level 2 reasoning jobs. *Id*. The holdings were specifically tailored to address RFCs containing the "one-to-two step" tasks language. Here, the proposed RFC is for detailed work, which does not conflict with the definition of level 3 work: ("commonsense understanding to carry out

7

instructions . . . deal with problems involving several concrete variables"). DOT, app. C., pt. III (4th ed. rev. 1991). While Ragan argues that she could not return to her past relevant work, the burden is on the plaintiff at Step Four to show she cannot perform past relevant work. *See Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

Ragan did not allege any mental impairments, or seek any mental health treatment that would have shored up her assertion that she could not work as an appointment clerk. No doctor placed any mental function restrictions on Ragan, and her PCP did not assess any mental limitations in his records. Finally, Ragan's attorney did not point to any conflict between the VE's testimony and the DOT at the hearing. Ragan did not carry her burden at step four and there was no evident conflict between the VE's testimony and the DOT.

### IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the medical opinions and there was no error at Step Four. The finding that Ragan was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 9th day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE